**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY TILLIS,<br><br>      Plaintiff,<br>  v.<br>ANTHONY LAMARQUE, et al.,<br><br>      Defendants.                      / | No. C 04-3763 SI<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

On March 3, 2006, the Court heard oral argument on defendants' motions to dismiss. Having carefully considered the papers submitted and the arguments of counsel, and for good cause shown, the Court hereby GRANTS IN PART defendants' motions for the reasons set forth below.

**BACKGROUND**

Plaintiff Gregory Tillis is currently incarcerated in California State Prison Solano in Vacaville ("Solano"), where he has been since December 24, 2003. He was previously incarcerated in Salinas Valley State Prison in Soledad ("Salinas"), where the events underlying this lawsuit took place. At the relevant times, defendant LaMarque was warden at Salinas, defendant Tucker was a facility captain at Salinas, and defendants Holston, Warlaumont, Espinoza, Lalanne, Moreno, Mendez, Agamao, Sickelton, and Binkele were correctional officers at Salinas. At the relevant times, defendant Cary was warden of Solano.

Tillis alleges that on August 14, 2003, while he was in Salinas, defendant Holston unlocked the door to his cell during an "emergency lockdown" and allowed four inmates, members of the "Kumi" gang, to enter and brutally beat him to the point of unconsciousness. He alleges that his injuries

included bruised and bloody eyes, bruised face and head, bruised back, shoulder and abdominal abrasions, swollen limbs, bloody gashes to his face, and psychological trauma. Am. Compl. ¶¶ 35, 42-44, 46. This attack occurred during the second guard shift, or "watch," during which Warlaumont, Espinoza, Sickelton, Agamao, and Binkele were on duty. Plaintiff alleges that he notified Espinoza and Warlaumont that he was in need of medical attention, but that they did nothing and that Espinoza responded by suggesting that his injuries were self-inflicted. Tillis also alleges that Sickelton, Agamao, and Binkele were aware of his request for medical attention but that they too did nothing. Eaton, Lalanne, Mendez and Moreno were also allegedly made aware of his injuries during the third watch, but also did nothing. *Id*. ¶¶ 49-52. Tillis finally received medical care when he was transferred to the infirmary at 4:00 P.M., two hours into the third watch and six hours after the assault, a period of time during which Tillis was lapsing in and out of consciousness. *Id*. ¶¶ 48, 53. He was then transferred to the Natividad Medical Center in Salinas, California, where medical staff found injuries including trauma, cuts, abrasions, swelling, and bruises. *Id*. ¶ 55. Holston later pled guilty to several charges related to this attack on Tillis, and is currently incarcerated in Avenal State Prison, serving a sentence of two years and eight months.[1] *Id*. ¶¶ 75-77.

Upon his return to Salinas, Tillis was placed in administrative segregation until his December 24, 2003 transfer to Solano. As a consequence of placement in administrative segregation, Tillis was denied access to his personal property, including his television, portable stereo, books, clothing, photographs, and other items, and was also not allowed onto the waiting list for prison employment. *Id*. ¶¶ 56-58. Finally, Tillis alleges that he still has not received adequate medical care after his transfer to Solano, formulating the basis for the inclusion of Cary as a defendant.

Tillis asserts a claim under 42 U.S.C. § 1983 against all defendants except Cary, in their official and personal capacities, alleging that their failure to prevent the assault and failure to provide him with adequate medical care after the assault constitutes a violation of the prohibition of cruel and unusual punishment contained in the Eighth Amendment to the Constitution of the United States. He also asserts an Eighth Amendment claim against Cary in his official capacity due to the continued denial of medical

---

[1] Default was entered as to Holston in the instant lawsuit on December 27, 2005.

2

care following his transfer to Solano. In addition, he asserts a claim against LaMarque, Holston, Espinoza, Warlaumont, Agamao, and Sickelton, in their official and personal capacities, under the Racketeer Influenced Corrupt Organizations Act ("RICO"), alleging that they conspired and associated with an enterprise that injured him in his property and business by placing him in administrative segregation. He is seeking $2,500,000 in compensatory damages, $4,500,000 in punitive damages, RICO treble damages, a declaration that defendants have deprived him of his Eighth Amendment rights in their official capacities, an injunction ordering that he be transferred from Solano to the California Medical Facility in Vacaville for treatment by physicians not affiliated with the California Department of Corrections and Rehabilitation ("CDC"), and attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c) and 32 U.S.C. § 1988.

Now before the Court are three motions to dismiss, which collectively raise several grounds for dismissal. First, defendants move to dismiss based on plaintiff's alleged failure to exhaust administrative remedies as required under 42 U.S.C. § 1997e(a) (Prison Litigation Reform Act, or "PLRA"). Second, defendants argue that plaintiff has failed to state a RICO claim because he lacked any property or business interest that could have been harmed. Sickelton additionally moves to dismiss the RICO claims on grounds that plaintiff has failed to comply with the pleading requirements of Rules 8 and 9 of the Federal Rules of Civil Procedure. In addition, defendants Warlaumont, Binkele, Tucker, Lalanne, Espinoza, Moreno, Mendez, Cary, and Lamarque move to dismiss the claim for injunctive relief on grounds that plaintiff must seek relief via his class representative in *Plata v. Schwarzenegger*. Finally, defendants Sickelton and Agamao also move to dismiss the claims under Eleventh Amendment immunity.

**LEGAL STANDARD**

The PLRA exhaustion provision does not impose a pleading requirement, but is instead an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). "The failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Id.* Such a dismissal

is not on the merits, and "the court may look beyond the pleadings and decide disputed issues of fact. If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Id.*

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984). In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.    Has Plaintiff Exhausted Administrative Remedies?**

The PLRA imposes a requirement that prisoners exhaust administrative remedies before filing suit with respect to prison conditions. *See* 42 U.S.C. 1997e(a). The exhaustion requirement applies to "all suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). There are four levels of prison appeals in California, consisting of one informal level followed by three formal levels of review. Cal. Code Regs. tit. 15, § 3084.6. Exhaustion requires a prisoner to pursue his appeal from the informal level through the third formal level. *Alexandroai v. California Dep't of*

4

*Corrections*, 985 F. Supp. 968, 969-70 (S.D. Cal. 1997).

The Court has determined that Appeal No. 03-3058 served to exhaust the Eighth Amendment claim against Espinoza and Warlaumont per an order dated June 21, 2005. At issue in the instant motions is whether that appeal serves to exhaust the Eighth Amendment claims against the other defendants or the RICO claims, and whether Tillis has exhausted those claims through any combination of Appeal No. 03-03097, Appeal No. 03-03676, and an unnumbered appeal.

### A.     Appeal No. 03-3058

Appeal No. 03-3058 described the assault on Tillis and the aftermath in which defendants allegedly ignored Tillis' repeated requests to be taken to the infirmary. Tillis Decl. Ex. A. It requested that Tillis be transferred due to his safety concerns, and that Holston, Warlaumont, and Espinoza be disciplined. *Id*. Defendants assert that Appeal No. 03-3058 did not raise the issues of a need for ongoing medical care or a criminal conspiracy, and only covered the failure of Espinoza and Warlaumont to provide Tillis with medical care immediately after the August 14, 2003 assault. Defendants take the position that the claim of deliberate indifference to safety against the remaining defendants was not the subject of Appeal No. 03-3058, and the appeal is therefore not sufficient to exhaust this claim against them.

A prison appeal need not name each defendant named in a subsequent federal action as a matter of law. *Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005). In *Butler*, a blind inmate requested assistance in performing basic functions such as getting to and from the dining hall and bathroom. *See id*. at 1182. His request was denied by prison authorities, as were his subsequent appeals. *See id*. He then filed suit in federal court under the Americans with Disabilities Act, naming several members of the prison staff as defendants. *See id*. at 1182-83. Because the defendants were not named in any of his prison appeals, the district court dismissed the claims on grounds of failure to exhaust, finding that the named defendants did not have prior notice of the claims against them in the appeals. *See id*. at 1183. The appellate court reversed, holding that the form used by the inmate to request an accommodation did not require him to identify any specific persons, and that by filling out and submitting the form he had done everything required of him by the PLRA. *See id.*

An examination of "Inmate/Parolee Appeal Form CDC 602" shows that it does not require anyone to be named, as with the form in *Butler*. Also as in *Butler*, the plaintiff in this case has exhausted Appeal No. 03-3058, and has added named defendants in his federal court action. This situation is directly analogous to *Butler*; the fact that the appeal did not name defendants other than Holston, Warlaumont, and Espinoza is irrelevant. The Eighth Amendment claims related to the assault and its aftermath are exhausted with regard to the newly named defendants.

However, the Court agrees with the defendants that Appeal No. 03-3058 did not deal with the claim against Cary regarding his ongoing need for medical treatment or the RICO claims, and thus cannot be considered to exhaust those claims as it did not give prison officials notice of them. To hold otherwise would be contrary to the purpose of the exhaustion requirement, which is to give prison officials the opportunity to assess a claim and take corrective action, thus obviating the need for litigation. *Porter v. Nussle*, 534 U.S. 516, 524-24 (2002). The Court finds that Appeal No. 03-3058 suffices to exhaust plaintiff's Eighth Amendment claims against all defendants except for the claim regarding his ongoing need for medical treatment, and does not serve to exhaust his RICO claims.

### B.     Appeal No. 03-03676 and the Unnumbered Appeal

In Appeal No. 03-03676, Tillis claimed that he remained in need of medical attention due to injuries he suffered in the assault. Tillis Decl. Ex. B. This appeal was denied at the second level of formal review on grounds that Tillis had been evaluated by an optometrist and physician who concluded that he did not have any need for ongoing care. *Id*. Defendants assert that Tillis never brought this appeal to the third and final level. Porter Decl. ¶ 5.

Tillis asserts that the appeal is nonetheless exhausted since officials did not respond to his appeals in a timely manner. California law requires a response within ten working days at the informal level, and within 30 working days at the second formal level when officials waive the first formal level. Cal. Code Regs. tit. 15, § 3084.6(b)(1), (b)(3). The record shows that prison officials took either one

6

or two months to respond to this appeal at the informal level.[2] Tillis Decl. Ex. B. Having waived the first formal level of review, officials then waited 55 days to respond to his appeal at the second level of review instead of the 30 working days mandated by statute. The response to his appeal at the second level is dated December 18, 2003, and the appeal indicates that it was sent to Tillis on December 23, 2003. *Id.*; Caden Decl. ¶ 4. Edward J. Caden, then Deputy Chief Warden at Salinas, states that it takes anywhere from several days to a week for an inmate to receive an appeal after it is sent back to him following the second level of review. Caden Decl. ¶ 4. Since Tillis was transferred to Solano on December 24, 2003, there would have been a significant delay of several weeks in the appeal reaching Tillis at his new location. *Id.* ¶ 5.

Tillis also asserts that he pursued this appeal at the next level through the unnumbered appeal filed after his transfer to Solano, since he viewed that as his best chance of receiving medical treatment in light of the fact that he had not received any response to Appeal No. 03-03676 at the second level; in fact, he did not receive the response until after he had already filed the unnumbered appeal directly to the third and final level of review, also called the "Director's level." Tillis Decl. ¶¶ 8-9. The unnumbered appeal makes the same request for medical treatment, and was denied as being improperly filed directly to the third formal level of review. Tillis Decl. Ex. C.

There is a great deal of authority in other circuits for the proposition that exhaustion occurs when prison officials fail to respond to an appeal within the time limit. *See*, *e.g., Boyd v. Corrections Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004) (administrative remedies are exhausted when prison officials fail to timely respond to properly filed grievance); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (the failure to respond to a grievance within the policy time limits renders remedy unavailable); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (when prison officials fail to respond, the remedy becomes unavailable, and exhaustion occurs); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (district court did not err when it declined to dismiss claim for failure to exhaust where prison failed to respond to grievance); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (when a valid

---

[2] The appeal has two mechanical date stamps, with one indicating that it was received on August 19, 2003 and the other indicating that it was received on September 23, 2003. Since it was not returned to Tillis until October 20, 2003, prison officials missed the deadline by a large margin in either case.

7

grievance has been filed and the state's time for responding has expired, the remedies are deemed exhausted); *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998) (when time limit for prison's response has expired, the remedies are exhausted). The only question is "determining at what point prison officials have sufficiently thwarted the process so as to render it unavailable." *Ellis v. Cambra*, 2005 U.S. Dist. LEXIS 37346, 14 (E.D. Cal. 2005).

The Court is convinced that the record shows that further appeal of the request for medical care should be considered unavailable. Tillis' unnumbered appeal specifically stated that he had previously filed a complaint seeking medical care but had yet to receive a response. Tillis Decl. Ex. C. It also gave the name and phone number of the investigating officer, who Tillis knew to be in possession of the previously filed form, giving officials the ability to contact that officer and learn that Tillis' appeal had already been denied at the second formal level. *Id.* Despite this, the response from prison officials informed him that he must go through the second formal review level - even though he had already done so. *Id.* The letter denying the unnumbered appeal is dated February 22, 2004, and Tillis did not file this action until August 26, 2004. Tillis Decl. Ex. C (denial letter); Complaint, *Tillis v. Lamarue*, No. 04-1781 MCE GGH (E.D. Cal. 2004) (showing August 26, 2004 filing date). By filing appeals of his claim requesting medical care at all levels before filing suit, Tillis did all that was required of him. He should not be required to re-file the same appeal at the initial informal level again simply because prison officials did not adjudicate his prior appeals until long after the statutory deadlines had passed, and because they failed to inquire with the investigating officer as to the status of his previous appeals when he appealed at the third formal level. Defendants have not met their burden of proving that plaintiff has not exhausted the claims contained within Appeal No. 03-03676 and the unnumbered appeal; the Court thus finds that Tillis has exhausted his claim for ongoing medical care.

This exhaustion must also apply to the claim against Cary, who is sued only in his official capacity, as the inclusion of Cary as a defendant forms the basis of the requested injunctive relief that would give Tillis the medical care that he seeks. While the claim against Cary deals with a new prison official in a new prison where officials have not had the chance to address Tillis' claim for ongoing medical care at the administrative level, the dismissal of Cary would render ineffective plaintiff's request for injunctive relief since Cary is the only party that can effectuate any transfer of Tillis to the

8

1 California Medical Facility. To dismiss Cary would allow prison officials to indefinitely delay an
2 inmate's suit seeking medical care by transferring him to a new facility when he has exhausted his
3 prison appeals and suit is imminent, thus forcing him to re-start the entire appeals process at the new
4 facility, which of course could ultimately transfer him again.[3]

**C.   Appeal No. 03-03097**

Tillis asserted in Appeal No. 03-03097 that his placement in administrative segregation for his own safety due to his being a victim of an attack, instead of his being transferred elsewhere, is cruel and unusual. Tillis Decl. Ex. D. He requested that he be "immediately referred back to ICC to be reclassified for 'emergency transfer' to another institution pending completion of the investigation." *Id*. As this appeal expressed displeasure with placement in administrative segregation, it is this appeal that relates to the RICO claims covering the denial of access to personal property and placement on the employment waiting list that accompanies placement in administrative segregation. Defendants assert that since this appeal (like the other appeals) did not specifically mention the property and employment issues, Tillis cannot be considered to have exhausted his RICO claims.

The pleading standard for prison appeals is lenient:

> When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.

*Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

In determining whether a claim has been exhausted, a court must consider whether a reasonable investigation of the complaint would have uncovered the allegations now before it. *See Gomez v. Winslow*, 177 F. Supp. 2d 977, 983 (N.D. Cal. 2001); *Sulton v. Wright*, 265 F. Supp. 2d 292, 298 (S.D.N.Y. 2003) (abrogated on other grounds as stated in *Scott v. Gardner*, 287 F. Supp. 2d 477 (S.D.N.Y. 2003)); *Torrence v. Pelkey*, 164 F. Supp. 2d 264, 278-79 (D. Conn. 2001).

---

[3] At oral argument, the parties indicated to the Court that they would attempt to come to some agreement by which Cary could be dismissed from this action without negating the effectiveness of any injunctive relief.

9

United States District Court
For the Northern District of California

Under this lenient standard, Appeal No. 03-03097 was sufficient to put prison officials on notice that Tillis was dissatisfied with his placement in administrative segregation in the absence of any wrongdoing on his part, and a reasonable investigation would have revealed the specific aspects of administrative segregation - denial of access to personal property and the waiting list for prison employment - that Tillis took issue with it.

Although the scope of Appeal No. 03-3097 is sufficient to cover plaintiff's RICO claims, the Court finds that this appeal is not exhausted. Appeal No. 03-03097 was partially granted at the first level of review, in that officials agreed to consider a transfer request after the completion of their investigation into the assault, instead of during the investigation as requested by Tillis. Tillis Decl. Ex. D. The letter sent to Tillis states "[i]f you are dissatisfied with this decision, you may appeal to the Second Level by following the instructions on your appeal form." *Id*. The CDC asserts that its record search indicates that Tillis brought this appeal to the third formal level of review, where it was screened out due to not having gone through the second formal level. However, this statement is incorrect; since the dates on this records search are the same as the initial filing of the complaint, they cannot logically be related to any appeal to the third level of review. Porter Decl. ¶ 7, Ex. A. In any case, plaintiff has not rebutted defendants' assertion that he did not pursue this appeal at the next level after receiving a partial grant at the first formal level.

The partial grant of an appeal constitutes exhaustion for purposes of the PLRA if there is no further remedy available through the administrative appeals process. "Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust." *Booth v. Churner*, 532 U.S. 731, 736 n. 4. (2001). However, if there is some remedy still available through the administrative process, a prisoner must exhaust his opportunities to appeal regardless of whether the specific remedy he seeks is available, as may be the case when money damages are sought. *See id*. at 734.

In this case, further appeal at the second formal level could conceivably have won Tillis the immediate transfer to another facility that he sought, as well as the return of his personal property and placement on the waiting list for prison employment. The defendants bear the burden of proving failure to exhaust, and have met that burden since the copies of Appeal No. 03-03097 supplied by both parties

10

show that there was no appeal beyond the first formal level. Plaintiff's papers mention Appeal No. 03-03097 only in passing; without more, the Court must find that Tillis has failed to exhaust Appeal No. 03-03097 and dismiss the related RICO claims without prejudice.[4]

### D. Does the Presence of Unexhausted Claims in the Complaint Mandate Dismissal of the Entire Action?

Previously, in the absence of Ninth Circuit guidance, this Court followed other circuit courts of appeal and applied the total exhaustion rule to dismiss a complaint containing exhausted and unexhausted complaints, as is urged by defendants in the instant motions. *See Rivera v. Hamlet*, 2003 U.S. Dist. LEXIS 21387 at 10-11 (N.D. Cal. 2003). However, the Ninth Circuit has since spoken directly to this issue after defendants filed their motions to dismiss, and has explicitly rejected the total exhaustion rule. *See Lira v. Herrera*, 427 F.3d 1164, 1175 (9th Cir. 2005). *Lira* provides that when a plaintiff files a complaint that contains both exhausted and unexhausted claims and wishes to proceed with only with the exhausted claims, "a district court should simply dismiss the unexhausted claims when the unexhausted claims are not intertwined with the properly exhausted claims," with the court anticipating that this will be the typical situation. *Id*. at 1175. When the exhausted claims and unexhausted claims are "closely related and difficult to untangle, dismissal of the defective complaint with leave to amend to allege only fully exhausted claims, is the proper approach." *Id*. at 1176.

The instant case comprises the former situation, in which the unexhausted claims are not intertwined with the exhausted claims. The exhausted claims concern the failure to prevent the assault and failure to provide medical care immediately following the assault in violation of the Eighth Amendment. The RICO claims concern the denial of access to personal property and placement on the waiting list for prison employment following Tillis' transfer to administrative segregation after the assault. While the claims are related in that all were triggered by the assault, they are not inextricably intertwined such that the Eighth Amendment claim cannot go forward following dismissal of the RICO

---

[4] Dismissal based on failure to exhaust removes the need to reach the question of whether the RICO claims survive a 12(b)(6) motion to dismiss, as well as the question of sufficiency under Rules 8 and 9 of the Federal Rules of Civil Procedure.

11

claims. Plaintiff wishes to go forward with remaining claims should some be found to be unexhausted. The Court will so order.

## II. Must Plaintiff Seek Injunctive Relief Through His Class Representative Under *Plata v. Schwarzenegger*?

Defendants next contend that the injunctive relief sought by Tillis can only be obtained through the class representative per the stipulation for injunctive relief in *Plata v. Schwarzenegger*, No. C-01-1351 TEH (N.D. Cal.).[5] Hardy Decl. Ex. A. *Plata* is a class action suit concerning the medical care of all CDC inmates, excluding inmates of Pelican Bay State Prison. The stipulation states:

> Neither the fact of this stipulation nor any statements contained herein may be used in any other case or administrative proceeding, except defendants, CDC, or employees thereof reserve the right to use this Stipulation and the language herein to assert issue preclusion and res judicata in other litigation seeking class or systemic relief.

Hardy Decl. Ex. A ¶ 29.

Plaintiff is seeking relief solely on his own behalf, and therefore does not fit into the stipulation's exception. *Plata* does not bar the injunctive relief sought by Tillis.

## III. Does the Eleventh Amendment Prevent Suit Against Defendants Agamao and Sickelton in Their Official Capacities?

Finally, Agamao and Sickelton argue that the Eleventh Amendment gives them immunity from suit in their official capacities for monetary damages. It is well established that a suit against an individual in his official capacity is covered by the Eleventh Amendment, and damages are therefore barred. *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1995). However, it is equally clear that individuals sued in their individual capacities are "persons" within the meaning of section 1983 and are not entitled to Eleventh Amendment immunity. *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

Plaintiff has sued Agamao and Sickelton in both their official and individual capacities, and asserts that he seeks monetary damages from defendants in their individual capacities only. The Eleventh Amendment presents no bar to the damages claim.

---

[5] The Court takes judicial notice of the stipulation for injunctive relief in *Plata*.

Agamao and Sickelton also assert that plaintiff's request for a declaration that defendants have violated his Eighth Amendment rights is barred by the Eleventh Amendment since it seeks a declaration regarding past conduct, as opposed to prospective future conduct. The Eleventh Amendment "does not bar actions seeking only prospective declaratory or injunctive relief against state officers in their official capacities." *Los Angeles County Bar Ass'n. v. March Fong Eu*, 979 F.2d 697, 704 (9th Cir. 1992). Since the requested declaration concerns the alleged deprivation of Tillis' Eighth Amendment rights in the past, and not a prospective violation, defendants claim that this exception to Eleventh Amendment immunity does not apply.

The Eleventh Amendment bars declarations stating that the past conduct of state officials violated federal law. *Green v. Mansour*, 474 U.S. 64, 65-66 (1985). Such declarations are permissible only to the extent that they are ancillary to prospective relief ordered by the court as a case-management device. *See id*. at 70-71. If a declaration concerning past violations of federal law would serve no purpose unless it were offered as res judicata in state proceedings on the issue of liability, it is barred since it would then have the effect of a damage award prohibited by the Eleventh Amendment. *See id*. at 73.

Plaintiff claims that the requested declaration is ancillary to the requested injunction that would transfer Tillis to the California Medical Facility for treatment by non-CDC affiliated physicians, since it will be relevant as to the cause of his injuries should there be future litigation regarding the scope and enforcement of the injunction. This argument is difficult, as any injunction would be accompanied by an opinion from this Court that would describe the cause of Tillis' injuries. Plaintiff has not shown that he suffers a likelihood of being harmed by defendants in the future; the requested declaration is thus "superfluous in light of the damages claim." *Nat'l Audubon Soc'y v. Davis*, 307 F.3d 835, 847 n. 5 (9th Cir. 2002) (citing *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997)). Plaintiff is barred by the Eleventh Amendment from seeking a declaration regarding past violations of federal law by the defendants in their official capacities.

## CONCLUSION

For the foregoing reasons, the motions to dismiss are DENIED with respect to the Eighth

**United States District Court**

For the Northern District of California

1  Amendment claims, and GRANTED with respect to the RICO claims.  In addition, the motions are
2  GRANTED with regards to the dismissal of plaintiff's request for a declaration that defendants have
3  violated federal law in the past. The motions are DENIED in all other respects (Docket Nos. 58, 80, 81).
4  **IT IS SO ORDERED.**

Dated: March 8, 2006

SUSAN ILLSTON
United States District Judge

14